MICHAEL C. BAUM (SBN 65158)
E-Mail: mbaum@rpblaw.com
ANDREW V. JABLON (SBN 199083)
E-Mail: ajablon@rpblaw.com
STACEY N. KNOX (SBN 192966)
E-Mail: sknox@rpblaw.com
RESCH POLSTER & BERGER LLP
1840 Century Park East, 17th Floor
Los Angeles, California 90067
Telephone: 310-277-8300
Facsimile: 310-552-3209

Attorneys for Plaintiff
Fabric Selection, Inc. and Counterclaim
Defendant

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| FABRIC SELECTION, INC., a California corporation,<br><br>        Plaintiff,<br><br>        vs.<br><br>TOPSON DOWNS OF CALIFORNIA, INC., a California corporation; WAL-MART STORES, INC., a Delaware corporation; DANIEL ABRAMOVITCH, an individual; and DOES 1 through 50, inclusive, Defendants,<br><br>        Defendant. | Case No.: 2:18-cv-04626-CAS-AFMx<br><br>Related to Case No.: 2:17-cv-05721-CAS-AFM<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION AND STAY OR DISMISS THE PROCEEDINGS OF THE DISTRICT COURT**<br><br>*Filed Concurrently with Declarations of Andrew V. Jablon and Sean Javaheri*<br><br>Date:      August 13, 2018<br>Time:     10:00 a.m.<br>Crtrm:    8D<br><br>Trial Date:     None Set |
| TOPSON DOWNS OF CALIFORNIA, INC., a California corporation,<br><br>        Counterclaimant,<br><br>        vs.<br><br>FABRIC SELECTION, INC., a California corporation,<br><br>        Counterclaim Defendant. | |

/ / /

/ / /

628360.2

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................. 5

II.   FACTUAL BACKGROUND .............................................................. 8

    A.    The Parties' Initial Relationship ................................................ 8

    B.    The Parties Changed Their Relationship To A Limited Copyright Licensing Arrangement ............................................................. 9

        1.    Topson's Negotiations with Walmart. ............................... 9

        2.    Topson's Negotiations with Fabric Selection for Limited Copyright Licenses Did Not Include Acceptance of an Arbitration Provision. ....................................................... 10

    C.    Topson's Infringement By Exceeding The Scope Of The Limited Copyright Licenses Fabric Selection Granted. ...................... 13

    D.    Topson Separately Infringed Fabric Selection's Copyrights In Other Designs, The Subject Of A Separate Action Before This Court. .......................................................................................... 14

III.   LEGAL ARGUMENT ....................................................................... 15

    A.    Applicable Law – Arbitration Requires Express Agreement Of The Parties. ................................................................................ 15

        1.    Defendants Bear the Burden of Establishing the Existence of an Agreement to Arbitrate ........................................... 15

        2.    California Common Law Controls the Issue of Contract Formation ........................................................................ 17

    B.    The Parties Never Agreed to Arbitration. ................................ 18

    C.    The Arbitration Clauses Could Only Be Binding If There Was Written Acceptance, Which There Was Not. ......................... 20

    D.    Even If Fabric Selection Had Agreed To Arbitration, Walmart Could Not Enforce The Arbitration Provisions ................... 22

    E.    Topson Waived Any Right To Arbitration By Pursuing Its Counterclaim. ....................................................................... 23

    F.    Judicial Economy Requires That This Case Remain Before This Court, Along With Topson I. .................................................. 25

    G.    This Is A Copyright Infringement Action, Meaning This Court Has Jurisdiction Over The Dispute. ..................................... 25

IV.   CONCLUSION ................................................................................. 27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc,*
    239 F.3d 1004, 1003 (9th Cir. 2001) ............................................... 23

*Agnes Medical Center v. PacifiCare of California*
    (2003) 31 Cal.4th 1187 ................................................................... 24

*American Aeronautics Corp. v. Grand Central Aircraft Co.,*
    155 Cal.App.2d 69 (1957) .............................................................. 19

*Apablasa v. Merritt & Co.*
    (1959) 176 Cal.App.2d 719, 1 Cal.Rptr. 500 ................................. 19

*Berman v. Freedom Financial Network, LLC*
    (N.D. Cal., June 11, 2018, No. 18-CV-01060-DMR) 2018 WL
    2865561 .......................................................................................... 17

*Chan v. Drexel Burnham Lambert, Inc.,*
    178 Cal.App.3d 632 (1986) ............................................................ 17

*Collins v. Thompson,*
    679 F.2d 168 (9th Cir. 1982) .......................................................... 19

*Cuadras v. MetroPCS Wireless, Inc.,*
    No. CV 09-7897 CAS AJWX, 2011 WL 11077125, at *6 (C.D. Cal.
    Aug. 8, 2011) .................................................................................. 17

*In re First All. Mortg. Co.,*
    280 B.R. 240 (C.D. Cal. 2002) ....................................................... 16

*Fisher v. A.G. Becker Paribas Inc.,*
    791 F.2d 691 (9th Cir. 1986) .......................................................... 23

*Giuliano v. Inland Empire Personnel, Inc.,*
    149 Cal.App.4th 1276 (2007) .................................................... 15, 18

*John Wiley & Sons, Inc. v. DRK Photo*
    (S.D.N.Y. 2014) 998 F.Supp.2d 262, *aff'd* (2d Cir. 2018) 882 F.3d
    394 ................................................................................................... 26

*Jurado v. Schutz 655 LLC*,
    No. 2:16-CV-05996-CAS-RAOx, 2017 WL 600076 (C.D. Cal. Feb.
    13, 2017) ...................................................................................................... 17

*Kramer v. Toyota Motor Corp.*
    (9th Cir. 2013) 705 F.3d 1122 .................................................................... 22

*Lamle v. Mattel, Inc.*,
    394 F.3d 1355 (Fed. Cir. 2005) ................................................................... 18

*Landberg v. Landberg*,
    24 Cal.App.3d 742 (1972) ........................................................................... 19

*Lasica v. America Online, Inc.*
    (C.D. Cal., Sept. 3, 2015, No. CV 15-4230-GW(FFMX)) 2015 WL
    12791495 ...................................................................................................... 26

*Marcus & Millichap Real Estate Inv. Brokerage Co. v. Hock Inv. Co.*,
    68 Cal. App. 4th 83 (1998) ......................................................... 15, 19, 20

*Marenco v. DirecTV LLC*
    (2015) 233 Cal.App.4th 1409 ...................................................................... 17

*Marlene Indus. Corp. v. Carnac Textiles, Inc.*,
    45 N.Y.2d 327 (1978) .................................................................................. 16

*MDY Industries, LLC v. Blizzard Entertainment, Inc.*
    (D. Ariz., July 14, 2008, No. CV-06-2555-PHX-DGC) 2008 WL
    2757357 ........................................................................................................ 26

*Ore & Chemical Corp. v. Stinnes Interoil, Inc.*,
    606 F.Supp. 1510 (SDNY 1985) ................................................................. 16

*In re Pago Pago Aircrash of January 30*,
    1974, 637 F.2d 704 (9th Cir. 1981) ............................................................. 19

*Panagotacos v. Bank of America*
    (1998) 60 Cal.App.4th 851, 70 Cal.Rptr.2d 595 ........................................ 19

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*,
    55 Cal. 4th 223 (2012) ................................................................................ 15

*Randles Films, LLC v. Quantum Releasing, LLC*,
No. CV1003909SJOSSX, 2010 WL 11549892 (C.D. Cal. Oct. 7,
2010; emphasis added) ....................................................................... 16

*Russ, August & Kabat, Prof'l. Corp. v. American Motorists Insurance
Co.*
(C.D. Cal., Aug. 26, 2008, No. CV075588GHKMANX) 2008 WL
11343032, – 3 ........................................................................ 12, 21, 22

*Tierney v. Image Entertainment, Inc.*
(C.D. Cal., Mar. 21, 2012, No. CV111305DSFAJWX) 2012 WL
13008214, at *4 ................................................................................. 26

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*
363 US 574 (1960) ............................................................................. 16

*Windsor Mills, Inc. v. Collins & Aikman Corp.*
(1972) 25 Cal.App.3d 987 ................................................................ 16

*Wood v. Houghton Mifflin Harcourt Pub. Co.*
(D. Colo. 2008) 589 F.Supp.2d 1230 ............................................... 26

**Statutes**

17 U.S.C. § 106(1) ................................................................................. 23

28 U.S. Code § 1338 .............................................................................. 27

California Commercial Code Article 2 .............................................. 6, 18

California Commercial Code § 2102 ...................................................... 6

California Commercial Code §§ 2102 and 2104 ................................... 18

Civ. Code § 1585 ............................................................................ 18, 21

Copyright Act ........................................................................................ 27

Uniform Commercial Code .................................................................... 18

4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Defendants Topson Downs of California, Inc. ("Topson"), Walmart Stores, Inc. ("Walmart") and Daniel Abramovitch (collectively, "Defendants") are moving (per the instant "Motion") to compel Plaintiff Fabric Selection, Inc. ("Plaintiff" or "Fabric Selection") to participate in arbitration, despite the fact that <u>the parties never entered into any agreement to arbitrate their disputes</u>.

Fabric Selection creates original designs for use on apparel, and its former customer Topson manufactures apparel.  This dispute arises from these parties entering into thirteen (13) separate agreements for a series of twenty-two (22) limited copyright licenses, pursuant to which Fabric Selection authorized Topson to print certain styles and quantities of garments bearing Fabric Selection's copyrighted designs for use on fabric for garments produced by Topson.  Topson initiated the process of entering into such licensing deals by sending Fabric Selection draft purchase order forms, requesting permission to manufacture a specific quantity of units of a specific design, at a specific price.  Such terms were the subject of negotiations, with the parties' ultimate copyright license agreements <u>reflected and finalized in the form of Fabric Selection's written invoices to Topson</u>.  The invoices were the final manifestations of the parties' agreements.

Topson surreptitiously exceeded the scope of those licenses by printing unauthorized quantities of the 22 copyrighted designs, and this copyright infringement litigation followed.  Just as a company that bought a license for Microsoft Office on ten (10) computers would be liable for copyright infringement if it instead installed the software on twenty (20) computers, this is <u>not</u> a breach of contract case or a "license dispute" – this is a copyright infringement action.  (See Section III.A.2, below.)

The Topson purchase orders contained arbitration provisions, which Topson now relies on to argue that the parties' dispute is subject to arbitration.  Among the

Motion's various deficiencies, Defendants ignore basic contract principles in an effort to paint Topson's purchase orders themselves as constituting the copyright license agreements underlying this dispute.  Topson is simply incorrect, as:

- The parties' copyright license agreements were limited licenses to use intellectual property, which is an intangible, <u>not</u> agreements for the purchase or sale of goods. As such, they are not subject to Article 2 of the California Commercial Code, which applies only to sale of goods. (Commercial Code § 2102.)  Instead, the issue of whether Topson's purchase orders resulted in binding contracts (and binding agreements to arbitrate) is governed by common law, here the "mirror image rule." (Section III.A.2.)

- In actuality, the Topson purchase orders only constituted offers, none of which were accepted by Fabric Selection. Instead, Fabric Selection sent its own invoices, which did not accept all of the terms of Topson's purchase orders, and which removed and modified terms of Topson's offer.  Accordingly, as a matter of contract law, the invoices constituted counteroffers, and rejections of the purchase orders' terms.  (Section III.B.)  In their utilization of the copyrighted designs and payment on the invoices, Topson accepted and performed under the terms of the invoices which set forth the terms of the copyright licenses.  <u>The invoices</u> are thus the last expression of the parties' agreement and are the controlling contracts, reflecting the terms of any Topson-Fabric Selection license agreements.  <u>Those invoices contained no agreements to arbitrate (and there is no manifestation of any acceptance or agreement to Topson's arbitration clause)</u>.

- In entering into the license agreements there was never any discussion between the parties about arbitration and there was no express agreement to arbitrate. (Declaration of Sean Javaheri ("Javaheri Decl"), ¶ 6.)

6

resch polster & berger LLP

Accordingly, there was clearly never an agreement or meeting of the minds as to dispute resolution through arbitration.

- As this Court has held, when determining whether an arbitration agreement exists, a standard similar to summary judgment applies, giving "the opposing party the benefit of all reasonable doubts and inferences that may arise." (Section III.A.1.) Under this standard and other applicable law, Defendants cannot establish an agreement to arbitrate.

- The 22 separate copyrighted designs at issue are reflected in 13 separate purchase orders and invoices, and thus 13 separate copyright license agreements. Defendants, therefore, are required to establish 13 separate "meetings of the mind" giving rise to 13 separate agreements to arbitrate, but they cannot establish even <u>one</u>. (Section III.C.)

The Motion must be denied, as there is no written or other agreement to arbitrate between any of the parties and Defendants cannot meet their burden of proof on this issue.

In addition to the foregoing basic contract law and evidentiary principals precluding a finding that Fabric Selection and Topson agreed to arbitrate this dispute, arbitration is also improper on the independent grounds that:

- Walmart cannot enforce any supposed arbitration provision because Walmart was not a party to any agreement between Topson and Fabric Selection. Whether or not Fabric Selection's claims against Topson rely upon Topson's purchase orders (which they don't), Fabric Selection's claims against Walmart for copyright infringement certainly do not rely on the Topson purchase orders. Rather, Walmart had no contractual privity with Fabric Selection, and engaged in different conduct in the distribution process, thereby infringing upon the Fabric Selection copyrights. As such, Fabric Selection was well within its rights to sue

Walmart for copyright infringement separately, without even naming Topson as a defendant.  Notwithstanding its equitable estoppel argument then, Walmart has no basis to enforce the arbitration provisions to which it was not even arguably a party.  (Section III.D.)

- Defendant Topson has waived any right to arbitration by filing a counterclaim in this action, based in part on rights purportedly arising under its invoices, which is inconsistent with its assertion of any right to arbitrate supposedly granted by those invoices. (Section III.E.)

- Judicial economy precludes compelling arbitration.  The instant action ("Topson II") is related to another case pending before this Court between the same parties, as Case No. 2:17-cv-05721-CAS-AFM ("Topson I"), which is the subject of a pending motion for consolidation (the "Consolidation Motion"), set for hearing concurrently with the herein Motion.  That case also involves these Defendants' infringement of Fabric Selection's copyrights, only in that matter, Topson made unauthorized copies of Plaintiff's designs without even seeking limited licenses via purchase orders.  Defendants can make no argument for arbitration of that dispute, and judicial economy mandates that both of these matters continue to proceed in this Court, rather than splitting up the various actions and requiring Plaintiff to fight a "two front war." (Section III.F.)

As there is no agreement to arbitrate among any of these parties, and all of the other facts and law before the Court weigh against compelling arbitration, the Motion should be denied.

## II.  FACTUAL BACKGROUND

### A.  The Parties' Initial Relationship

Fabric Selection is a creator of original copyrighted print designs.  Typically, Fabric Selection produces fabric using these designs and sells that fabric to clothing

manufacturers, who use fabric bearing Fabric Selection designs to manufacture garments, which they then sell to retailers. Topson is incorrect in asserting that "Fabric Selection designs print artwork which it licenses to apparel companies such as Topson." (Motion, at 2.) In actuality, Topson was among a small number of Fabric Selection customers in having such a licensing arrangement, as Fabric Selection typically sells fabric directly and does not allow its customers licenses to Fabric Selection designs. (Javaheri Decl., ¶ 2.)

Topson had been a Fabric Selection customer for a number of years. (Javaheri Decl., ¶ 3.) Initially, Topson, like other Fabric Selection customers, placed orders with Fabric Selection for a given amount of fabric, and Fabric Selection would fulfil those orders by having the requested yardage manufactured, using its own sourced textile mills, and then deliver finished fabric to Topson. (Javaheri Decl., ¶ 3.)

## B. The Parties Changed Their Relationship To A Limited Copyright Licensing Arrangement.

After several years of Topson purchasing fabric from Fabric Selection, Topson proposed that, from time to time, instead of purchasing fabric, Topson would pay for a limited copyright license to use a specific copyrighted design for production of a specifically agreed number of units, of a specific garment type, on agreed terms. Fabric Selection and Topson did, in fact, subsequently negotiate and enter into such limited licenses. There was no blanket or overarching license agreement, but rather, case-by-case negotiation of terms whereby, if the parties agreed to a copyright license, it was for a specific design, in connection with a specific number of units, on a specific garment type, for a specific negotiated price. (Javaheri Decl., ¶ 4; Declaration of Andrew V. Jablon ("Jablon Decl."), ¶ 2; Exh. A (Nguyen Depo Transcript), 153:15-154:8; Exh. D (Kachevas Depo Transcript) 66:6-25.)

### 1. Topson's Negotiations with Walmart.

The process by which the parties entered into these copyright license agreements was consistent throughout their relationship. Fabric Selection would

provide Topson with various copyrighted designs that Topson would then present to its customers, such as Walmart (all of the purchase orders at issue in this case involve sales to Walmart). Topson would be provided with image files of Fabric Selection's copyrighted designs and, from time to time, with sample yardage containing Fabric Selection's copyrighted designs so Topson could manufacture sample garments to show to Walmart. Topson generally presented Walmart with such options via a document referred to as a Design Pack or a "line sheet," which required Topson to have a Fabric Selection design in hand to prepare that document for Walmart's review. (Javaheri Decl., ¶ 5 and Jablon Decl., ¶ 2; Exh. A (Nguyen Depo Transcript), at 78:8-16, 83:3-18; Exh. B, C.)

If Walmart opted to proceed with acquiring a particular product from Topson, it issued a purchase order to Topson, and Topson would then, and only then, contact Fabric Selection requesting a copyright license with respect to whatever copyrighted design(s) were needed for the garment which Walmart selected. (Jablon Decl., Exh. A (Nguyen Depo Transcript), at 111:21 – 112:22) Topson would make this request by sending a draft purchase order, requesting to use a given design on a specified number of units of a specific garment which Topson needed to fulfil a specific Walmart order.[1] (Javaheri Decl., ¶ 6; Exh. E-H.)

### 2. Topson's Negotiations with Fabric Selection for Limited Copyright Licenses Did Not Include Acceptance of an Arbitration Provision.

The Topson purchase orders contained purported arbitration provisions and various other terms, but these forms were nothing more than a vehicle for Topson to

---

[1] Topson's Vice President of Production and Sourcing, Lynda Nguyen, confirmed that, as expressly stated on the purchase orders, the proposed license was always for a specific number of finished garment <u>units</u>, not yardage of fabric, as erroneously stated by Topson in Footnote 3 of the Motion. (Jablon Decl., ¶ 3, Exh. A (Nguyen Transcript) 70:17 - 71:4)

resch polster & berger llp

request a style, quantity, and price for a given design, and were standard forms Topson used for other types of transactions (typically fabric orders) as evidenced by the fact that the purchase order forms also included facially irrelevant terms (e.g., discussing warranty and terms for the shipping of "goods" when here no goods were to be delivered). All such terms were generally illegible, written in fine print on the face of the purchase orders. (Javaheri Decl.,¶ 6, Exhs. E-H.) They were submitted before any negotiation between Topson and Fabric Selection as to terms such as price or quantity to be permitted under a proposed copyright license. (Jablon Decl., Exh. D (Kachevas Depo Transcript), at 66:6-25.) In fact, the term "purchase order" is a misnomer – Topson was not purchasing anything; rather, it was acquiring an intangible copyright license. Topson's representatives understood that the purchase orders were proposals for a license, and not agreed-upon licenses. This is evidenced by, among other things, an August 20, 2015 e-mail from a Topson representative sending a purchase order and asking Fabric Selection to advise as to "your best price for me as the units are big." (Javaheri Decl., Exh. D.)

The purported arbitration clause on the Topson form and the subject of dispute resolution via arbitration was never discussed between the parties. (Javaheri Decl., ¶6.)

Topson's form purchase order states that the purchase order "shall be deemed accepted, and a binding contract between the parties, <u>upon seller's execution of an original or copy of this PO</u>, written acceptance in any other form by seller or commencement of performance by seller." (Gordon Decl., Exh. A; emphasis added.) The purchase orders contain <u>no</u> requirement of affirmative conduct by Fabric Selection. For example, there is no obligation in the purchase orders for Fabric Selection to deliver the designs to Topson on disks or in any other specific form. This, of course, is unsurprising as, by the time Topson sent its proposed purchase order, <u>Topson already had Fabric Selection's design</u>. By that point, Topson:

1.  <u>always</u> had an electronic file containing the copyrighted design

1                   (Javaheri Decl., ¶ 7; Jablon Decl., Exh. A (Nguyen Depo

2                   Transcript), at 83:3-18, 107:17 – 108:1); and

3       2.    <u>frequently</u> had fabric bearing the design (Javaheri Decl., ¶ 7), as

4                   well as a "color-separated" electronic copy of the copyrighted

5                   design.  (Javaheri Decl., ¶ 7 and Jablon Decl., Exh. A (Nguyen

6                   Depo Transcript), 84:9-15.)

7  Topson in fact concedes in the Declaration of Kelley Gordon that sometimes Fabric

8  Selection sent Topson the design files before a purchase order was issued.  (Gordon

9  Decl., ¶ 10.)  This is confirmed by the fact that packing lists showing shipment of

10  disks containing a given design often pre-dated the invoice that Fabric Selection sent

11  Topson in connection with that copyrighted design.  (Javaheri Decl., ¶ 13 - 16; Exhs.

12  E - H.)  Accordingly, there was no "performance by seller" that can constitute an

13  acceptance of the purchase order terms, as performance of an act not called for by an

14  offer cannot constitute an acceptance of that offer.  *Russ, August & Kabat, Prof'l.*

15  *Corp. v. American Motorists Insurance Co.* (C.D. Cal., Aug. 26, 2008, No.

16  CV075588GHKMANX) 2008 WL 11343032, at * 2 – 3.  Further, there was no act

17  for Fabric Selection to perform as this contract was for the grant of an intangible

18  license to use a copyrighted design, which did not require any action or act on the part

19  of Fabric Selection.

20      Moreover, it is undisputed that <u>Fabric Selection did not sign any of the purchase</u>

21  <u>orders that are the subject of the Motion</u>. (Motion, at 7.)  Instead, Fabric Selection

22  would either accept the quantity and price terms set forth in a given purchase order

23  or, more frequently, negotiate alternative price terms it found acceptable.  (Javaheri

24  Decl., ¶ 17.)  Topson would often, but not always (*see e.g.*, Gordon Decl., Exh. A-1

25  and A-2, L-1 and L-2, N-1 and N-2, U-1 and U-2, and V-1 and V-2), follow up by

26  sending a revised purchase order reflecting those terms.  However, whether or not a

27  revised purchase order reflecting new price terms was sent (Jablon Decl., Exh. D

28  (Kachevas Depo Transcript), at 71:20 – 72:19), Fabric Selection would always send

Topson a counteroffer in the form of an invoice indicating the limited copyright license terms upon which Fabric Selection was willing to agree with respect to a given order.  (Javaheri Decl., ¶ 18.)  This invoice was the final embodiment of the copyright license terms acceptable to Fabric Selection.

The terms of Fabric Selection's invoices were always different from those of the purchase orders as, among other things, the invoices did <u>not</u> include either an arbitration or limitation of liability clause.  (See, Gordon Decl. Exh. B-1 and B-2.) The invoices often also included different price terms (if the price was not acceptable in the original purchase order, and a revised purchase order had not been sent). (Gordon Decl., Exh. A-1 and A-2, L-1 and L-2, N-1 and N-2, U-1 and U-2, and V-1 and V-2.)  Exhibit A to the Gordon Declaration, for example, shows an initially proposed price of $0.20 per unit, but shows that the parties subsequently agreed to $0.25 per unit, as Fabric Selection rejected Topson's initially proposed price. (Gordon Decl., Exh. A.)

Upon receiving invoices reflecting terms to which Fabric Selection was willing to agree, it was then incumbent on Topson to either accept this counteroffer, and pay the invoice and use the copyrighted design, or reject it.  As the declaration of Kelly Gordon confirms, with respect to each of the invoices at issue here, Topson paid – and thereby accepted – the terms of the each of those counteroffers.  (Gordon Decl., ¶ 12.)  As discussed below in Section III.B, under California law, it would be the terms of the Fabric Selection invoices, <u>not</u> the purchase orders, that constitute and reflect the final embodiment of the parties' agreements.  Unless Topson agreed to and accepted the terms of Fabric Selection's invoice, Topson had no license or right to use a given copyrighted design.  The terms of the Fabric Selection invoice governed the transaction between the parties and not the Topson "purchase order."

**C.**     **<u>Topson's Infringement By Exceeding The Scope Of The Limited Copyright Licenses Fabric Selection Granted.</u>**

There was no question as to the scope of any given license.  By accepting the

invoices (which was Fabric Selection's counteroffer to grant Topson a limited license, and thus what actually constitutes the parties' contract), Topson was afforded a limited license to use a specific design, on a specific garment type, and only up to a specific maximum number of units at an agreed price.   (Jablon Decl., ¶ 3; Exh. A (Nguyen Depo Transcript), at 153:15-154:8; Exh. D (Kachevas Depo Transcript), at 68:14-22.)  The parties' arrangement required Fabric Selection to place its full trust in Topson to honestly comply with the limited copyright license by producing only the number of units authorized under a given agreement.

This litigation is the result of Topson having breached that trust by exceeding the terms of its limited copyright licenses and infringing on Fabric Selection's copyrights by manufacturing hundreds of thousands of units (at least) of unauthorized garments that were beyond the scope of any agreed upon limited copyright licenses. (Javaheri Decl., ¶ 19.)

### D.   Topson Separately Infringed Fabric Selection's Copyrights In Other Designs, The Subject Of A Separate Action Before This Court.

This dispute involves Topson infringing Fabric Selection's copyrights in 22 copyrighted designs. Fabric Selection only came to discover those infringements during the course of its investigation of Topson infringing *other* Fabric Selection designs (i.e., the Topson I matter) for which Topson never issued *any* purchase orders (and as a consequence Fabric Selection never issued any invoices).  Much like what occurred in Topson II, Topson acquired Fabric Selection's designs via the process described above, presented those designs to Walmart, and had those designs accepted by Walmart.  In Topson I, however, Topson never bothered to even issue a purchase order for the designs, let alone reach an agreement as to license terms as reflected by a Fabric Selection invoice.   Fabric Selection's own investigation discovered unauthorized copies of certain of those designs being sold at Walmart and commenced the Topson I litigation  against Topson with respect to those copyrighted designs, Walmart, and Abramovitch on or around August 2, 2017.  Significant discovery has

1   proceeded in the Topson I matter, including written discovery and depositions.

2   (Jablon Decl., ¶ 2.)  Only through the investigation of the Topson I infringements did

3   Fabric Selection discovery the Topson II infringements.

4      Given that Topson I arises from related operative facts, i.e. the licensing

5   arrangement that is at the heart of this dispute, the two actions are related.

6   Accordingly, Fabric Selection has since filed a motion to have the Topson I matter

7   consolidated with this action.  (Topson I, Docket No. 40.)  With no purchase orders

8   at issue, Topson has no basis to seek arbitration of Topson I, and has not attempted to

9   make such an argument.

10  **III.   LEGAL ARGUMENT**

11      **A.   Applicable Law – Arbitration Requires Express Agreement Of The**

12      **Parties.**

13         **1.   Defendants Bear the Burden of Establishing the Existence of**

14            **an Agreement to Arbitrate**

15      In a misguided effort to avoid *their* burden of establishing that the parties

16  agreed to arbitration, Defendants assume away the existence of an agreement to

17  arbitrate, conflating the issue of whether an arbitration agreement is *enforceable* with

18  whether an arbitration agreement *exists*.  (Motion, at 6.)  Debating enforceability, of

19  course, skips a step, as Defendants cannot first establish that Fabric Selection entered

20  into any such agreement.  *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US),*

21  *LLC*, 55 Cal. 4th 223, 236 (2012). *See also*, *Marcus & Millichap Real Estate Inv.*

22  *Brokerage Co. v. Hock Inv. Co.*, 68 Cal. App. 4th 83, 88–89 (1998) ("There is no

23  public policy in favor of forcing arbitration of issues the parties have not agreed to

24  arbitrate"); *Giuliano v. Inland Empire Personnel, Inc.*, 149 Cal.App.4th 1276, 1284

25  (2007) ("[t]he petitioner bears the burden of proving the existence of a valid

26  arbitration agreement by a preponderance of the evidence").

27      Here there was never any discussion between the parties regarding arbitration

28  and it was never part of their contract. (Javaheri Decl, ¶6.)

"(A)rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.* 363 US 574, 582 (1960). *In re First All. Mortg. Co.*, 280 B.R. 240, 244 (C.D. Cal. 2002) ("if no agreement to arbitrate was ever actually entered into, the dispute need not be sent to arbitration").  Moreover, <u>Arbitration cannot be compelled based on implied or even oral consent, but only on the basis of an express written agreement</u>.  *Ore & Chemical Corp. v. Stinnes Interoil, Inc.*, 606 F.Supp. 1510 (SDNY 1985).  Even there, the agreement "must be clear and direct, and must not depend upon implication, inveiglement or subtlety."  *Marlene Indus. Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 334 (1978).  *See also*, *Windsor Mills, Inc. v. Collins & Aikman Corp.* (1972) 25 Cal.App.3d 987, 994.  In *Windsor,* an arbitration provision contained in a seller's forms, which constituted offers to sell, was in small print and not conspicuous, and the buyer was not advised that the forms contained such a provision and did not have actual knowledge of the provision until after receiving seller's demand for arbitration.  The court found that the parties did not reach an agreement to arbitrate, notwithstanding the buyer's outward manifestations of apparent assent as exhibited by its retention of the forms without objection and its initial acceptance of the goods.

Ultimately, "Courts should order arbitration of a dispute <u>only</u> where the court is satisfied that neither the formation of the parties' arbitration agreement nor its enforceability or applicability to the dispute is in issue." *Randles Films, LLC v. Quantum Releasing, LLC*, No. CV1003909SJOSSX, 2010 WL 11549892, at *1 (C.D. Cal. Oct. 7, 2010; emphasis added).  To that end,

> 'When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard of Fed.R.Civ.P. 56.' In considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate was made, a district court should give

1                to the opposing party the benefit of all reasonable doubts

2                and inferences that may arise.  [Citations.]

3   *Jurado v. Schutz 655 LLC*, No. 2:16-CV-05996-CAS-RAOx, 2017 WL 600076, at *5

4   (C.D. Cal. Feb. 13, 2017).

5        As this Court has recognized, if there is a genuine dispute of material fact over

6   whether there has been an agreement to arbitrate, the Motion should be denied.  *Id.*;

7   *See also*, *Cuadras v. MetroPCS Wireless, Inc.*, No. CV 09-7897 CAS AJWX, 2011

8   WL 11077125, at *6 (C.D. Cal. Aug. 8, 2011).  *Berman v. Freedom Financial*

9   *Network, LLC* (N.D. Cal., June 11, 2018, No. 18-CV-01060-DMR) 2018 WL

10  2865561, at *2.  Denying a motion to compel arbitration, the *Berman* court explained

11  that "When considering a motion to compel arbitration, a court applies a standard

12  similar to the summary judgment standard of [Federal Rule of Civil Procedure] 56."

13  The court went on, "[o]nly when there is no genuine issue of fact concerning the

14  formation of the [arbitration] agreement should the court decide as a matter of law

15  that the parties did or did not enter into such an agreement."  *Id.*  Here there are no

16  facts establishing consent to arbitrate or an agreement to do so, let alone facts beyond

17  dispute.  Defendants have thus failed to meet their burden.

18        **2.**    **California Common Law Controls the Issue of Contract**

19              **Formation**

20        As Defendants note in the moving papers, "state contract law applies to

21  determine whether the parties have entered a binding agreement to arbitrate."

22  (Motion, p. 6, citing *Marenco v. DirecTV LLC* (2015) 233 Cal.App.4th 1409.)

23  "The *existence* of a valid agreement to arbitrate involves general contract principles,

24  and state law governs disposition of that question." *See also*, *Chan v. Drexel Burnham*

25  *Lambert, Inc.*, 178 Cal.App.3d 632, 640 (1986) (emphasis in original).

26        Here, Defendants correctly characterize the series of contracts between Topson

27  and Fabric Selection as a "licensing relationship." (Motion p. 2, ln. 11). A license of

28  intellectual property rights is governed by California <u>common law</u> and general

resch polster & berger LLP

provisions of the Civil Code.  California's Commercial Code (its adopted version of the Uniform Commercial Code) does <u>not</u> apply to intellectual property.  *Lamle v. Mattel, Inc.*, 394 F.3d 1355, 1359 (Fed. Cir. 2005) ("we apply the substantive contract law of California," not the UCC, because "a license for intellectual property, including a license for a patent, is not a sale of goods").[2]

### B.    The Parties Never Agreed to Arbitration.

To meet <u>their</u> burden, <u>Defendants</u> were required to demonstrate by a preponderance of the evidence a valid offer and acceptance of an arbitration provision under California common law.  *Giuliano*, 149 Cal.App.4th at 1284.  In analyzing contract formation, California applies the "mirror image rule," whereby, to be effective, an acceptance <u>must</u> accept <u>all</u> of the terms of an offer.  To that end, by statutory fiat,

> [a]n acceptance must be absolute and unqualified, or must include in itself an acceptance of that character which the proposer can separate from the rest, which will conclude the person accepting.  A qualified acceptance is a new proposal.

Civ. Code § 1585.  Including any additional terms in response to an offer – as Fabric Selection's invoices always did – is both a counteroffer and a rejection of the initial offer.  Accordingly, in order to determine which terms the parties actually agreed to, the Court must look at Fabric Selection's response to the offers conveyed by Topson's purchase orders.  The contract can only be comprised of the terms in the purchase order or invoice that they have in common with one another.

Defendants concede that the invoices Plaintiff sent in response to Topson's purchase orders "did not contain any arbitration provisions." (Motion, p. 7. ln. 21). Other disparate terms abound.  The invoices also:

---

[2] Article 2 of the Commercial Code, by its express terms applies only the sale of goods between merchants.  (See Commercial Code §§ 2102 and 2104) and not to license of intellectual property.

1.  did not include the purported limitation of liability clause (purchase order, ¶ 7);

2.  included contradictory terms regarding warranties (purchase order, ¶ 4; invoice ¶ 4); and

3.  included new terms regarding timeliness of claims (invoice, ¶ 1). Where, as here, the purported "acceptance" contains conditions not embraced in the offer and adds new terms, there is no meeting of the minds, no acceptance, and hence no contract. *Landberg v. Landberg*, 24 Cal.App.3d 742, 752 (1972); *American Aeronautics Corp. v. Grand Central Aircraft Co.*, 155 Cal.App.2d 69, 80 (1957); *In re Pago Pago Aircrash of January 30*, 1974, 637 F.2d 704, 706 (9th Cir. 1981); *Collins v. Thompson*, 679 F.2d 168, 171 (9th Cir. 1982); *In re Pago Pago Aircrash*, *supra* 637 F.2d at 706. There would have been no contracts unless the <u>counteroffer</u>, i.e., the Fabric Selection invoices, were accepted without modification. *See id.* at 706. If it is accepted – and here, all 22 invoices were accepted by performance (payment) – it is the terms of the counteroffer (invoice) that control.

*Marcus & Millichap Real Estate Inv. Brokerage Co. v. Hock Inv. Co.*, 68 Cal. App. 4th 83 (1998) is directly on point. There,

> although the buyers offered to include the arbitration provision as part of the purchase agreement, the sellers did not accept that offer. The terms of an offer must be "'met exactly, precisely and unequivocally for its acceptance to result in the formation of a binding contract ...; and a qualified acceptance amounts to a new proposal or counteroffer *putting an end to the original offer* ....'" (*Panagotacos v. Bank of America* (1998) 60 Cal.App.4th 851, 856, 70 Cal.Rptr.2d 595, quoting *Apablasa v. Merritt & Co.* (1959) 176 Cal.App.2d 719, 726, 1 Cal.Rptr. 500.) None of the subsequent counteroffers between the buyer

and seller mentioned the arbitration provision. Thus, [the plaintiff] did not agree to submit controversies to binding arbitration, as the arbitration clause requires.

*Id.*, at 89.  Arbitration was never a term the parties discussed or negotiated and Fabric Selection's invoices, which contain no arbitration clause, – its counter-offers – thus reflect the parties' operative agreements.

### C.   The Arbitration Clauses Could Only Be Binding If There Was Written Acceptance, Which There Was Not.

Topson has provided <u>no</u> evidence whatsoever that its purchase orders were accepted in the form provided, either in writing or by performance.  To the contrary, the draft purchase orders are unsigned.  Further, several of the Fabric Selection invoices, which Topson acknowledges were paid, contain <u>different</u> royalty rates than those on the purchase orders.  (Gordon Decl., Exh. A-1 and A-2, L-1 and L-2, N-1 and N-2, U-1 and U-2, and V-1 and V-2.)  Unable to show written acceptance, Topson argues that its purchase orders were accepted by Fabric Selection's conduct, despite failing to include *any* evidence to support this assertion.

Specifically, Topson alleges that "Fabric Selection commenced performance," supposedly under the Purchase Orders, when it "provided the design files sought and issued an invoice to Topson." (Motion, p. 7, ln. 12-13.)  Tellingly, however, Topson fails to articulate what purchase order terms such conduct supposedly satisfied.  This is unsurprising, as the purchase orders contain <u>no</u> requirement of affirmative conduct by Fabric Selection.  For example, there is no obligation in the purchase orders (or the invoices) for Fabric Selection to provide the designs to Topson on disks or in any other specific form.  This is also unsurprising given that, as explained above, by the time Topson sent its proposed purchase orders, <u>it already had Fabric Selection's design in hand, often in multiple formats.</u>  By that point, Topson:

  1.   <u>always</u> had an electronic file containing the copyrighted design (Javaheri Decl., ¶ 7; Jablon Decl., Exh. A (Nguyen Depo

resch polster & berger llp

1           Transcript), at 83:3-18, 107:17 – 108:1); and

2       2.    <u>frequently</u> had fabric bearing the design (Javaheri Decl., ¶ 7), as

3           well as a "color-separated" electronic copy of the copyrighted

4           design.  (Javaheri Decl., ¶ 7 and Jablon Decl., Exh. A (Nguyen

5           Depo Transcript), 84:9-15.)

6       Accordingly, as there is nothing in the draft purchase orders calling for Fabric

7 Selection's "performance" by way of an affirmative act, acceptance could only occur

8 by written acceptance.  It is undisputed, however, that there never was written

9 acceptance of the purchase order terms.  Instead, as Defendants acknowledge, Fabric

10 Selection sent and Topson received the invoices in response to the purchase orders.

11 As the invoices contained different terms than the purchase orders, they could not

12 constitute acceptance thereof; they were counteroffers. *See* Civ. Code § 1585.  And

13 unlike the Topson purchase orders, the Fabric Selection invoices reflecting its

14 counteroffers <u>did</u> call for an affirmative act, i.e. payment.  And these counteroffers

15 were accepted by Topson's performance – again, payment.

16       Under such circumstances, California's "mirror image rule" of contract

17 formation makes clear that any Fabric Selection invoice was a rejection and

18 counteroffer.  And because the invoices excluded the purported arbitration provisions,

19 there was never an agreement to arbitrate.  *Russ, August & Kabat, Prof'l. Corp. v.*

20 *American Motorists Insurance Co.* (C.D. Cal., Aug. 26, 2008, No.

21 CV075588GHKMANX) 2008 WL 11343032.  The *Russ, August & Kabat* court

22 applied the mirror image rule and found that a plaintiff had not agreed to arbitration,

23 despite the defendants having sent guidelines during negotiations that provided for

24 arbitration.  *Id.*, at * 2 – 3.  Like here, the plaintiff had invoiced defendant, but, also

25 like here, that did not reflect performance under the defendant's proposed terms,

26 including defendant's proposed arbitration provision.  The court explained

27 "Defendants offer no showing that Plaintiff subsequently performed according to the

28 terms of the July 9, 2002 letter. Rather, Defendants merely show that Plaintiff sent

invoices to Defendants, and that Defendants paid such invoices." *Id.* The court went on, "[n]either can we find acceptance by performance of the … Guidelines, nor of the arbitration provision specifically." *Id.* The same reasoning and result are appropriate here. Topson's purchase orders were <u>not</u> accepted by writing <u>or</u> performance, plaintiff's invoices notwithstanding. The Motion, therefore, must be denied.

**D.   Even If Fabric Selection Had Agreed To Arbitration, Walmart Could Not Enforce The Arbitration Provisions**

Irrespective of whether the Topson purchase orders resulted in a binding arbitration agreement with Fabric Selection (they did not), under no circumstance can Walmart establish that it should somehow be able to enforce any such arbitration agreements, as a non-signatory to those purchase orders, against whom Fabric Selection has separate and distinct claims. *Kramer v. Toyota Motor Corp.* (9th Cir. 2013) 705 F.3d 1122, 1132–1133, upon which Defendants curiously rely (Motion, at 9, 10), is instructive.

Denying a non-signatory's motion to compel arbitration, the *Kramer* court explained that "California state contract law does not allow a nonsignatory to enforce an arbitration agreement based upon a mere allegation of collusion or interdependent misconduct between a signatory and nonsignatory." *Id.* Citing the *Goldman* case, upon which Defendants also rely (*see* Motion, at 10 - 11), the *Kramer* court went on "[i]n *any* case applying equitable estoppel to compel arbitration despite the lack of an agreement to arbitrate, a nonsignatory may compel arbitration only when the claims against the nonsignatory are founded in and inextricably bound up with *the obligations imposed by the agreement containing the arbitration clause.*" *Id.* (emphasis in original).

Each of the Defendants here were engaged in separate conduct, such that Fabric Selection's claims against each are not "inextricably bound" to one another. Topson and Walmart infringed separate statutory rights belonging to Fabric Selection – (a) Topson, a manufacturer and importer, having infringed upon Plaintiff's exclusive

right under 17 U.S.C. § 106(1) "to reproduce the copyrighted work in copies"; and (b) Walmart, a retailer, having infringed Plaintiff's exclusive right under Section 106(3) to "to distribute copies. . .of the copyrighted work to the public by sale." Because these Defendants violated separate statutory rights, separate actions against them would have been appropriate. *A&M Records, Inc. v. Napster, Inc*, 239 F.3d 1004, 1003 (9th Cir. 2001) (infringement established by showing that "the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106"). As Fabric Selection's claims against these two defendants are not "substantially interdependent," even if Fabric Selection's claims against Topson did arise out of the purchase orders with the purported arbitration provisions, equitable estoppel cannot require arbitration against a Walmart, a non-signatory to those agreements, meaning that Fabric Selection's claims against Walmart must proceed before this Court. Judicial economy thus weighs against compelling arbitration as well, as discussed in Section F below.

**E.    Topson Waived Any Right To Arbitration By Pursuing Its Counterclaim.**

As a separate and independent basis for denying the Motion, and notwithstanding that "[w]aiver of a contractual arbitration right is disfavored and must be evaluated "in light of the strong federal policy favoring enforcement of arbitration agreements" (*Fisher v. A.G. Becker Paribas Inc*., 791 F.2d 691, 694 (9th Cir. 1986)), should the Court find that there *was* a contractual agreement to arbitrate, any such right to arbitration has been waived by Topson's conduct.

"A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.,* 791 F.2d at 694. There is no dispute that Defendants were aware of the arbitration provision in the purchase orders [Docket No. 18 (Counterclaim), ¶ 29]. Further, there is no dispute that Topson has taken actions

1   inconsistent with that claimed right.

2       Specifically, Topson has filed a counterclaim alleging breach of contract,

3   relying on the very same purchase orders supposedly mandating arbitration. Putting

4   aside the fact that the Purchase Orders are not the operative contracts governing the

5   parties' agreement, the counterclaim contends that Fabric Selection breached

6   contractual agreement(s) with Topson by, *inter alia*, "(b) Initiating this action in

7   District Court in violation of the POs arbitration provision; and (c) claiming, in this

8   action, damages in excess of those allowed under the POs' limitation of liability."

9   [Docket 18 (Counterclaim), ¶ 29.].

10      Defendants filed their counterclaim before seeking any stay of the litigation in

11  connection with their contention that arbitration is appropriate, which weighs against

12  compelling arbitration under California law. *Agnes Medical Center v. PacifiCare of*

13  *California* (2003) 31 Cal.4th 1187, 1196 (explaining that "when determining waiver,

14  a court can consider" several factors, including "whether a defendant seeking

15  arbitration filed a counterclaim without asking for a stay of the proceedings").

16      The Counterclaim also seeks affirmative relief in the form of compensation

17  allegedly owing as a result of "royalty overpayments uncovered by an audit of

18  Topson's books and records."   [Docket 18 (Counterclaim), ¶ 29(a).]   Filing the

19  Counterclaim seeking such affirmative relief is no doubt "inconsistent with the right

20  to arbitrate," among the factors considered in finding waiver. *Id.*

21      Defendants should not be allowed to have it both ways, as they are attempting

22  to do by seeking relief for supposed overpayments both in this Court and in a separate

23  arbitration proceeding. Such conduct inconsistent with arbitration necessarily causes

24  prejudice to Plaintiff, including but not limited to incurring the additional litigation

25  expense of fighting a "two front war" and opposing the herein Motion while also

26  addressing the purported claims brought in the Counterclaim.

27

28

**F.** **Judicial Economy Requires That This Case Remain Before This Court, Along With Topson I.**

As described above, Fabric Selection only came to discover the 22 infringements at issue in the herein Topson II litigation during the course of its investigation of Topson infringing *other* Fabric Selection designs for which it never issued *any* purchase orders (i.e., the Topson I matter).

Given that Topson I arises from related operative facts, i.e. the licensing arrangement that is at the heart of this dispute, the two actions are related. Accordingly, Fabric Selection has since filed a motion to have the Topson I matter consolidated with this action. (Topson I, Docket No. 40.) With no purchase orders at issue in that matter, Topson has no basis to seek arbitration of Topson I, and has not attempted to make such an argument. If the Court were to grant Defendants' Motion and send this Topson II matter to arbitration, Topson I, with its overlapping issues, would still be proceeding before this Court, thereby requiring Plaintiff to fight a "two front war." This would be directly contrary to the interests of judicial economy.

The fact that there can be no argument that Topson I is subject to arbitration confirms that Topson's efforts to send half of the parties' disputes to a separate forum is simply an attempt to drive up Plaintiff's litigation costs, not a good faith effort to enforce rights to which it genuinely believes it is entitled. The Motion should be denied on this grounds as well.

Further, as Walmart cannot enforce the alleged arbitration agreement (as discussed in Section III.D above), Fabric Selection's claims against that defendant would proceed before this court in either event, or be left in limbo while the remainder of the two front war proceeds. In addition to defeating judicial economy, this also raises the prospect of inconsistent verdicts, further weighing against arbitration.

**G.** **This Is A Copyright Infringement Action, Meaning This Court Has Jurisdiction Over The Dispute.**

Defendants also argue, albeit in a footnote, that this court lacks jurisdiction

because this matter is a contract dispute, as opposed to a copyright dispute, supposedly due to the purchase orders governing the parties' dealings. (Motion, at p. 4, fn. 4.) Even if the purchase orders, as opposed to Fabric Selection's invoices were the operative agreements, this would still be incorrect, as Topson's production of unauthorized quantities of designs means that it was acting outside the scope of any copyright license Fabric Selection granted it in connection with those designs.

Whether the parties' copyright license agreements were embodied in Topson's purchase orders or Fabric Selection's invoices, exceeding the scope of those licenses constitutes copyright infringement. *John Wiley & Sons, Inc. v. DRK Photo* (S.D.N.Y. 2014) 998 F.Supp.2d 262, 287, *aff'd* (2d Cir. 2018) 882 F.3d 394. The *DRK Photo* court granted summary judgment in favor of a plaintiff alleging, *inter alia*, that defendant "violated the license terms by printing more units than authorized." Where the operative agreement only allowed the defendant to print 30,000 copies of the subject work, the defendant exceeded the scope of the license, and was liable for copyright infringement, when it printed more than that amount. *Id.*; *Wood v. Houghton Mifflin Harcourt Pub. Co.* (D. Colo. 2008) 589 F.Supp.2d 1230, 1243 (granting summary judgment on infringement where defendant "printed the LOL textbooks in numbers that exceeded the scope of the licenses granted to HMH."); *Tierney v. Image Entertainment, Inc.* (C.D. Cal., Mar. 21, 2012, No. CV111305DSFAJWX) 2012 WL 13008214, at *4 (granting plaintiff summary judgment where "Defendant does not dispute that it manufactured additional units of *Naked City* episodes after the expiration of the 2002 License Agreement"); *Lasica v. America Online, Inc.* (C.D. Cal., Sept. 3, 2015, No. CV 15-4230-GW(FFMX)) 2015 WL 12791495, at *3 ("if the licensee acts outside the scope of the license, the licensor may sue for copyright infringement."); *MDY Industries, LLC v. Blizzard Entertainment, Inc.* (D. Ariz., July 14, 2008, No. CV-06-2555-PHX-DGC) 2008 WL 2757357, at *7 ("Users may infringe if they engage in an act of copying that is outside the scope of the limited license granted"). As copyright infringement claims arise

1 under the Copyright Act, this Court has Federal Question jurisdiction over this

2 dispute. 28 U.S. Code § 1338.

3 **IV.    <u>CONCLUSION</u>**

4     Based on the foregoing, this Court should deny Defendants' Motion.  Fabric

5 Selection did not agree to arbitration as would be required to compel it to participate

6 in an arbitration proceeding.  The documents containing the arbitration provision that

7 Defendants cite were nothing more than offers, which Plaintiff never accepted, but

8 instead responded with counter-offers reflecting the terms to which Plaintiff would

9 agree.  Such terms (and the discussion between the parties) did not include any

10 agreement to arbitrate disputes.  Fabric Selection disputes the existence of an

11 arbitration agreement both factually and legally.  Moving party has not met its burden

12 of proof by preponderance of the evidence sufficient to establish an agreement to

13 arbitrate and therefore Fabric Selection cannot be compelled to arbitrate.

14

15 DATED:  July 23, 2018                RESCH POLSTER & BERGER LLP

16

17

18                          By:  _____*/s/ Stacey N. Knox*_____

19                               STACEY N. KNOX
                                Attorneys for Plaintiff and Counterclaim
20                               Defendant Fabric Selection, Inc.

21

22

23

24

25

26

27

28

628360.2                                27

## PROOF OF SERVICE

**Fabric Selection, Inc. v Topson Downs of California, Inc.**
**Case No. 2:18-cv-04626-CAS-AFMx**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California.  My business address is 1840 Century Park East, 17th Floor, Los Angeles, CA 90067.

On July 23, 2018, I served true copies of the following document(s) described as **PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION AND STAY OR DISMISS THE PROCEEDINGS OF THE DISTRICT COURT** on the interested parties in this action as follows:

| | |
|---|---|
| Erica J. Van Loon<br>evanloon@glaserweil.com<br>Thomas P. Burke Jr.<br>tburke@glaserweil.com<br>Justin Thiele<br>jthiele@glaserweil.com<br>GLASER WEIL FINK HOWARD<br>AVCHEN & SHAPIRO LLP<br>10250 Constellation Boulevard, 19th Floor<br>Los Angeles, CA  90067 | Attorneys for Defendants Topson Downs of California, Inc., Daniel Abramovitch, and Wal-Mart Stores, Inc. |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 23, 2018, at Los Angeles, California.

_/s/ Nazia Rahman_
Nazia Rahman

628360.2